SARAH NOWELL, Administratrix, Appellant from a decree of the Judge of Probate *v.* JOHN NOWELL, Administrator *de bonis non.*

Upon the death of an administrator without having settled his administration-account, it belongs to *his* representative, and not to the administrator *de bonis non,* to present such account to the Judge of Probate for allowance and settlement.

James Nowell, the husband of the appellant, was administrator on the estate of his *father,* and died without having settled his account at the Probate office. The appellant then took administration of the estate of her husband, and the respondent took administration *de bonis non* of the estate of the father. The *appellant* having presented to the Judge of Probate, in her character of administratrix, an administration-account of her late husband as administrator of the goods and estate of *his father,* the Judge decreed that no further cognizance be taken of it, it being, in his opinion, not regularly before him; from which decree the administratrix appealed to this Court.

*Shepley* for the appellant.

The statutes regulating the settlement of estates and the jurisdiction of the Courts of Probate having authorized the Judge of Probate to examine and allow the accounts of executors and administrators, the subject matter of this case was once within his exclusive jurisdiction. It was made his duty to inspect, with his own eye, the settlement of all estates in his county. Has the death of the party taken this jurisdiction away? For such, in fact, is the question, which the Judge of Probate seems to have decided in the affirmative, he having referred her to the common law Courts, to claim the value of the services of her late husband as administrator. But that

the administration-account is to be settled at the Probate office, the statute has explicitly declared. Who is to present it? Not the administrator *de bonis non,* for he is interested against its allowance. It is his duty to resist all claims for the services of *James.* On the contrary the *administratrix* is interested to obtain a settlement of all the accounts of her intestate, and an allowance for his services.

Such seems to have been the uniform course in the ecclesiastical courts in *England;* for it is said that the payment of sums under forty shillings by the executor may be proved by his own oath, but that *after his death,* the oath of *his representative* shall not be received as sufficient. *Burn. Eccl. Law* 427. *Ought.* 347. *Toller* 492.

And the same course of proceeding passed *sub silentio* before the Supreme Judicial Court of *Massachusetts* in the time of *Parsons C. J.* whose vigilance was particularly directed to correct the errors of inferior tribunals, especially of Courts of Probate. *Storer v. Storer,* 6 *Mass.* 390. If the Judge of Probate had *no* jurisdiction in that case, then his decree was merely void, and debt would not lie upon it;—and yet the action of debt was sustained.

Indeed it is not material by whom the account is presented, since it is the duty of an administrator to give notice to all persons interested to appear and shew cause against its allowance. And being once before the Judge, and all persons duly summoned, it only remains for him to examine the account, and allow or reject it.

*J. Holmes,* for the respondent.

The appellant represents the estate of *James Nowell,*—the respondent that of *John;*—between whom the Judge of Probate could not adjudicate. His decree therefore is right, though the reasons given may be erroneous. He has no jurisdiction in these cases except over accounts rendered by the immediate representative of one deceased.

The necessity of appointing *any* administrator *de bonis non* shews that the appellant's account ought not to be sustained. *He* represents the estate of his own *intestate,* and *therefore* he alone is the proper person to present all unsettled accounts re-

Nowell v. Nowell.

lating to it. The appellant's account is merely a private demand of her late husband against the estate of his father, in which he is made chargeable for the monies he has received, and claims allowance for services done. And her demand is to be adjusted by the legal representative of the father. If he refuses to do her justice, and any money is due, her remedy is open at law. Or, if not at law, yet the administrator *de bonis non* ought to exhibit the accounts of his predecessor, and obtain and pay over the balance to his legal representative.

The Judge of Probate was correct, on another ground, in refusing to take cognizance of the account presented. It shews payments made by *James* in his life time, and more than four years since, of a large sum beyond the assets by him received. Now by making such advances beyond the assets, he made himself a *creditor* of the estate ;—and to all claims of *creditors* the lapse of four years is, by the statute, a peremptory bar. If the administrator pays beyond the funds in his hands, it is at his own peril. If he neglect for four years to reimburse himself, by obtaining a settlement of his account at the Probate office, the loss is his own. He can pay no outlawed debts without being guilty of mal-administration ;—and by the same reason he cannot retain for his own debt. *Parsons v. Mills*, 2 *Mass.* 80. *Williams v. Lawrence*, 15 *Mass.* 326. *Storer v. Storer*, 9 *Mass.* 37. *Scot v. Hancock*, 13 *Mass.* 162. *Ex parte Allen*, 15 *Mass.* 59. *Thompson v. Brown*, 16 *Mass.* 172. *Brown v. Anderson*, 13 *Mass.* 201. *Dawes, Judge, &c. v. Shed*, 15 *Mass.* 6. *Johnson v. Libby*, 15 *Mass.* 140.

*Shepley*, in reply.

Suppose the administrator *de bonis non* should not *choose* to present the account ;—what is the remedy against him? Yet if *he* is required to do this, it is a requisition not contained in his bond ;—and is unreasonable, because it obliges him to look into the doings of his predecessor, without giving him any legal right to obtain the vouchers to support them.

WESTON J. delivered the opinion of the Court as follows.

*James Nowell*, administrator of the goods and estate of *John Nowell*, deceased, having made a certain progress in the duties

Nowell v. Nowell.

assigned him, died without having perfected the administration, and before his administration-account, as far as he had gone, had been examined and allowed by the Judge of Probate. After the death of the said *James*, *Sally Nowell*, who had been duly appointed administratrix of his goods and estate, presented the administration-account of the said *James*, to the Judge of Probate for examination and allowance. This account, thus presented, the Judge of Probate by his decree refused to receive and examine; it not appearing to him to be a matter regularly brought within his jurisdiction.

From this decree, the said *Sally Nowell* interposed an appeal to this Court. And whether the Court of Probate should have taken cognizance of this account or not, is the question presented for our consideration.

Upon the death of an administrator, without having completed the administration, his administrator does not represent him in the relation in which he, the first administrator, stood to his intestate. No privity arises between the estate of the first intestate and the last administrator; but the administration of that estate is to be completed in virtue of a new authority, to be delegated by the Probate jurisdiction, to an administrator *de bonis non.*

It becomes important however to distinguish between the authority which an administrator has to represent his intestate, and the responsibility he is under to the tribunal from which he derives his power, to render a true and faithful account of whatever he may have done in pursuance of the trust reposed in him. In the exercise of his delegated authority, he acts *en autre droit;* but in the account he renders of his proceedings, he discharges a duty, for which he is personally bound; the due performance of which is secured by his administration bond. In his transactions with other persons, debtors or creditors of his intestate he acts in his representative capacity; but when he appears before the Judge of Probate to account for his doings, it is for the purpose of making an adjustment between himself and the estate he represents. It is true that in his accounts he describes himself as administrator; but the items made on the debit side are charges, which he claims to have allowed in favour of himself personally against the estate of his

Nowell *v.* Nowell.

intestate. Thus the estate and interest of the administrator becomes directly affected by the allowance of every item in his administration-account; and the Court of Probate interposes its superintending power to protect the estate represented from any improper claims, which the administrator might be tempted to make, for his own benefit. For the due performance of all the duties and responsibilities of such administrator, he, in his life time, is personally bound, and his representative is answerable upon his decease; it therefore becomes necessarily incident to the power, duty, and authority of the representative to be permitted to shew that these duties and responsibilities have been faithfully discharged. To refuse him this privilege, would be to hold him accountable for the doings of the party he represents and, at the same time, to withhold from him the means of shewing that such party had conducted with the most perfect fidelity.

It could not be seriously contended that, in a suit brought upon the administration bond, against the representative of the first administrator upon his decease, the former could not be received to shew that there had been no breach of the conditions of the bond. How is this to be done where the administrator, having conducted with diligence and fidelity, dies without having settled his administration-account? That account must be adjusted, before it can be ascertained whether he has done his duty or not. Nothing is more clear than that the examination and allowance of accounts of this description, appertains to the Probate jurisdiction. It seems therefore necessarily to result that the last administrator, who is answerable in his representative capacity, upon the first administration bond, should be permitted to resort to that tribunal to examine and to allow, or to reject the accounts of the first administrator; by which alone the extent of his responsibility, and how far he may have fulfilled, or fallen short of the duties incumbent upon him, can be ascertained.

But it is contended that the representative of the first administrator, should procure the adjustment of the accounts of the latter, through the intervention of the administrator *de bonis non* of the first intestate.

Nowell *v.* Nowell.

The duties of the administrator *de bonis non*, are confined and limited to the goods and estate, not administered upon. So far as they have been rightfully administered, they are placed beyond his agency and control. It is not made a part of his duty to procure an allowance of the accounts of the first administrator. So far as he may interpose, his interest, in his representative capacity, is adverse to such allowance. At common law, there was no privity whatever between the first administrator, and the administrator *de bonis non*. The latter could not enforce a judgment, recovered by the former. *Grout v. Chamberlain*, 4 *Mass.* 611. And there can be no propriety in requiring the representatives of the former to resort to the latter, to present the accounts of the first administrator for examination and allowance.

But we are not without authority to guide us in the determination of the question before us. By the practice of the ecclesiastical courts in *England*, to whose jurisdiction this subject belongs, the oath of the administrator himself is received to verify all items in his account of administration under forty shillings; but, upon his decease, his representatives are required to substantiate such items by other proof. *Burns' ecclesiastical law* 427. *Toller's law of executors* 492. This practice proves that the representatives of the first administrator, are there received to present and verify the administration accounts of the latter.

In the case of *Storer v. Storer*, 6 *Mass.* 390, cited in the argument, *Joseph Storer*, administrator of *John Storer*, deceased, died before he had closed his administration. His administrators settled an administration-account of their intestate, as he was administrator of the estate of the said *John Storer*, deceased. A balance was found due from the estate of *Joseph* to the estate of *John;* and a decree was passed directing the administrators of *Joseph* to pay that balance to the administrators *de bonis non* of *John Storer's* estate. Upon this decree the administrators *de bonis non* brought an action of debt against the administrators of *Joseph*, and prevailed. The action was sharply contested upon other points; but neither the opposing counsel, nor *Parsons* C. J. in delivering the opinion of the Court, suggested any objection to the regularity of the proceedings before the Judge of Probate. The decree, which was the basis of that action,

Nowell v. Nowell.

was predicated upon the settlement of an administration-account of the first administrator, by his administrators; and if the Probate Court did not in fact possess the jurisdiction it assumed to exercise in that case thus presented, it is extremely improbable that such an exception, which would have been fatal to the action, should have escaped the attention of the learned counsel, or of the bench.

The administratrix of the deceased administrator does not, in the case before us, assume to proceed further in the administration of the estate of the first intestate; but she claims to be permitted to shew, before the proper tribunal, for the benefit of the estate of her intestate, what he had in fact done in his life time, in pursuance of the trust reposed in him, by the competent authority. Unless this course of proceeding be allowed to her, it might be difficult to determine in what manner the administration-account of her intestate, can be legally examined and adjusted.

As to the expediency of allowing or rejecting the whole, or a portion of the account exhibited, upon the merits, that is a question not regularly before us on this appeal; and it becomes therefore unnecessary, at this time, to notice many of the authorities, having a bearing upon this point, cited by the counsel opposed to the appellant.

Upon full consideration, we are of opinion, upon principle and authority, that the account, of which the Judge of Probate declined to take cognizance in this case, was rightfully presented to him by the appellant, for examination and allowance; and it is therefore ordered and decreed here, that the decree of the said Judge of Probate, refusing such cognizance, be reversed; and that this case be remitted to him for further proceedings, in conformity to this opinion.